**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

ROBERT L. MURRAY,

                Plaintiff,

v.                                         No. 12-CV-1783
                                              (FJS/CFH)

SARA NEPHEW, RC II; Mental Health;
Clinton Correctional Facility;

                Defendant.

---

**APPEARANCES:**                        **OF COUNSEL:**

ROBERT L. MURRAY
05-A-5765
Plaintiff Pro Se
Clinton Correctional Facility
P.O. Box 2002
Dannemora, NY 12929

HON. ERIC T. SCHNEIDERMAN        CATHY Y. SHEEHAN, ESQ.
Attorney General for the                Assistant Attorney General
    State of New York
Attorney for the Defendants
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Robert L. Murray ("Murray"), an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendant, a DOCCS employee, violated his constitutional rights by issuing a misbehavior report in retaliation for his bringing a

---

    [1] This matter was referred to the undersigned for report and recommendation pursuant to 26 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

lawsuit. Compl. (Dkt. No. 1) at 4. Presently pending is defendant Nephew's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 14. Rosario does not oppose the motion. For the following reasons, it is recommended that defendant's motion be granted.

## I. Background

The facts are related herein in the light most favorable to Murray as the non-moving party. See subsection II(A) infra.

On March 5, 2012, Murray filed a § 1983 action against Defendant Nephew and a Dr. Gillani alleging that they "changed [Murray's] 'mental health diagnosis' so that he would not be able to re-enter the Special Needs Unit ("SNU") in retaliation for filing lawsuits against the Office of Mental Health ("OMH"). Murray v. Gillani, No. 12-CV-401 (LEK)(ATB), 2013 WL 838351, at *1 (N.D.N.Y. Feb. 11, 2013) (hereinafter Murray I) (Ex. A)[2]; see also Compl. at 4 (explaining that the genesis of the current claim came from the lawsuit filed against Nephew) . On March 6, 2013, the Hon. Lawrence E. Kahn approved and adopted Magistrate Andrew T. Baxter's Report and Recommendation granting defendants' summary judgment motion, dismissing the action. Murray v. Gillani, No. 12-CV-401, 2013 WL 838306 (N.D.N.Y Mar. 6, 2013) (Ex. B). On December 5, 2012, Murray filed the current action against Nephew alleging that she issued a false misbehavior report in retaliation for the Murray I lawsuit. Compl. at 4–6.

On July 26, 2012, Murray had a call out to Hospital III, and was seen by Defendant Nephew, a Rehabilitation Counselor, at the Clinton Correctional Facility. Compl. at 4.

---

[2] Unpublished decisions shall be attached to this Report and Recommendation.

2

While there, Nephew asked Murray about the March 5th lawsuit he had filed against Nephew and Dr. Gillani, to which Murray responded "don't worry about it." Id. Nephew continued to ask Murray about the lawsuit and when he did not answer, Nephew got up and walked out of the room. Id. When Murray attempted to also walk out of the room, Nephew told the officer to "lock [him] up." Id. When Murray asked Nephew the reason for doing so, Nephew responded that she would "figure something out." Id. On that same day, Nephew issued Murray a misbehavior report for violating rules 107.10: Interference; 102.10: Threats; 106.10: Direct Order; resulting in a sentence of 30 days in Keeplock and loss of privileges. Dkt. No. 1-1 at 13; Dkt. No. 17 at 1. Defendant Nephew states in the misbehavior report that on November 26, 201, Murray "made several threatening statements" such as, "I will sue your ass" and "I will take you to court." Dkt. No. 1-1 at 13. Murray continued to make such comments even after being directed to refrain from doing so. Id. Because of the continued "threatening and intimidating behavior," Defendant Murray terminated the interview and exited the room. Id. Murray refused to leave the room. Id.

## II. Discussion

### A. Legal Standard

Under Fed. R. Civ. P. 12 (b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure calls upon the court to assess the facial sufficiency of that pleading using a pleading standard

3

which, "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" in order to withstand scrutiny. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Iqbal, 556 U.S. at 677–78 (quoting FED.R.CIV.P. 8(a)(2)). That rule commands that a complaint contain more than mere legal conclusions. See id. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "A pleading that offers 'labels and conclusions' or 'a formulaic recitations of a cause of action will not do.'" (quoting Twombly, 550 U.S. at 555)).

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Twombly, 550 U.S. at 555–56) ; see also Cooper v. Pate, 378 U.S. 546, 546 (1964) (citations omitted); Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir. 2003) (citations omitted); Burke v. Gregory, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (citations omitted). However, the tenet that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. Iqbal, 556 U.S. at 678. To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570); see also Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile Twombly does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'" In

4

re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 570) (alterations and footnote omitted).

When assessing the sufficiency of a complaint against this backdrop, "[w]e construe plaintiff's complaint liberally accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff's favor. Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cit. 2009) (citing Homes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted)). When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submission must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se litigant's allegations or arguments that the submissions themselves do not suggest that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (Internal quotation marks, citations, and footnotes omitted); see also Sealed Plaintiff v. Sealed Defendant # 1, 537 F.3d 185, 191–92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.'" (citations omitted)).

### B. Retaliation

Courts have been cautioned to approach First Amendment retaliation claims by prisoners with skepticism and particular care. Davis v. Goord, 320 F.3d 346, 352 (2d Cir.2003) (citing Dawes v. Walker, 239 F.3d 489, 491 (2d Cir.2001), overruled on other

5

grounds by Swierkiewicz v. Sorema, NA, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). However, that does not mean that such claims are to automatically be dismissed. Such a claim can survive a defendant's motion to dismiss, but only if plaintiff alleges facts tending to establish that (1) the speech or conduct that led to the allegedly retaliatory conduct is the sort of speech or conduct that is protected by the Constitution; (2) defendant(s) took adverse action against the plaintiff; and (3) there is a causal connection between the protected speech or activity and the adverse action. See e.g., Jones v. Harris, 665 F. Supp. 2d 384, 398 (S.D.N.Y. 2009). These allegations may not be conclusory; they must have some basis in specific facts that are not inherently implausible on their face. Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); South Cherry Street LLC v. Hennessee Group LLC, 573 F.3d 98, 110 (2d Cir.2009). Additionally, if Murray makes these showings, Defendant Nephew may avoid liability if demonstrated that Defendant would have filed the misbehavior report "even in the absence of the protected conduct." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Mount Healthy Sch. Dist. V. Doyle, 429 U.S. 274).

Furthermore, "[o]nly retaliatory conduct that would deter a similarly-situated individual of ordinary firmness from exercising his . . . constitutional rights constitutes an adverse action . . . [; if a] retaliatory act is de minimis, [it falls] outside the ambit of constitutional protection. Davis, 320 F.3d at 353 (citing Dawes, 239 F.3d 489). In this regard, prisoners may be required to tolerate more than public employees or average citizens before a purportedly retaliatory action taken against them is considered adverse. Thaddeus–X v. Blatter, 175 F.3d 378, 392–93 (6th Cir., 1999).

6

The Second Circuit has defined "adverse action" in the prison context, as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004) (quoting Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003). The Second Circuit has "made clear that this objective test applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." Id.

Murray claims that Defendant Nephew issued a false misbehavior report in retaliation for the filing of the March 5, 2012 claim, by Murray, against Nephew. However, Defendant Nephew contends that Murray I was a frivolous lawsuit and therefore not protected activity. The right of access to courts is protected by the First Amendment's clause granting the right to petition the government for grievances. California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510, 92 S.Ct. 609, 612, 30 L.Ed.2d 642 (1972); Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990). However, "filing a court action that is frivolous is not constitutionally protected activity." Henry v. Dinelle, No. 10-CV-456 (GTS/DEP), 2011 WL 5975027, at *7, n.11 (N.D.N.Y. Nov. 29, 2011) (Ex. C); see also, Hurley v. Blevins, No. Civ. A. 6:04-CV-68, 2005 WL 997317, at *6 (E.D. Tex. Mar. 28, 2005) (noting that "[a] claim of retaliation can be made only for constitutionally protected activity, and the filing of frivolous lawsuits does not fall within this category.") (Ex. D).

In the Murray I lawsuit, which is the genesis for the current claim, the Court determined that the retaliation claim was in fact frivolous, stating "[i]t is clear that plaintiff is attempting to create his own 'retaliation' by acting so inappropriately that Ms. Nephew finally issued the misbehavior report about which plaintiff has been warned." Murray I, 2013 WL

7

838351, at *11 (Ex. A). Accordingly, as Murray was not engaged in protected activity, he has failed to meet the first prong of the analysis and his complaint should be dismissed.

Furthermore, even if the analysis was continued as if Murray was in fact engaged in constitutionally protected activity when Defendant Nephew issued a misbehavior report, Murray still fails to meet the remaining prongs for a retaliation claim. Regarding the second prong, there is no dispute that Defendant Nephew filed a misbehavior report against Murray after Defendant Nephew had been served the complaint in Murray I, which constituted adverse action. See Gill v Pidlypchak, 389 F.3d 379, 384 (2d Cir. 2004) (holding that the filing of false misbehavior reports constitutes adverse action). However, questions arise when analyzing the third prong, as there is no evidence to support a casual connection between Murray's filing of the previous lawsuit and Defendant Nephew's issuance of a misbehavior report.

Even if there were evidence to indicate that Defendant Nephew's filing of the misbehavior report, which constituted adverse action, was motivated in part by Murray's protected activity namely, filing a lawsuit, in light of the violations and explanation listed infra, Defendant Nephew would have taken the same adverse action in the absence of the protected activity, thereby allowing Nephew to avoid liability.

For the reasons stated, Defendant's motion to dismiss the retaliation claim should be granted.

**C. Collateral Estoppel**

Defendant Nephew contends that her actions in writing the misbehavior report were justified because, as determined in Murray I, the court already concluded that she wrote said misbehavior report for proper purposes. While not specifically stated as such, Defendant contends issue preclusion applies, directing an identical finding as in the previous case and dismissing any of Murray's potential retaliation claims.

"Once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first action." Allen v. McCurry, 449 U.S. 90, 94 (1980). Collateral estoppel is applicable:

> If (1) there has been a final determination on the merits of the issue sought to be precluded; (2) the party against whom . . . preclusion is sought has a full and fair opportunity to contest the decision . . . ; and (3) the issue sought to be precluded by the earlier suit is the same issue involved in the later action.

Davis v. Halpern, 813 F.2d 37, 39 (2d Cir. 1987) (citation omitted). The requirement of full and fair opportunity to contest requires that the plaintiff "was fully able to raise the same factual or legal issues" in the prior litigation as asserted in the present case. LaFleur v. Whitman, 300 F.3d 256, 274 (2d Cir. 2002).

In this case, preclusion is appropriate based on collateral estoppel. First, there was a final determination in the Murray I, as the judge directed a verdict in the defendant's favor, on the merits, dismissing Murray's retaliation claims. Specifically, it was noted that the July 26, 2012 misbehavior report stated that Murray had been counseled on prior call outs to refrain from threatening behavior and "a review of the medical records submitted

9

by the defendants shows that defendant Nephew had warned plaintiff several times about his aggressive behavior before she actually filed a misbehavior report against him." Murray I, 2013 WL 838351, at *11 (Ex. A). The court also states that "[i]t is clear that plaintiff is attempting to create his own 'retaliation' by acting so inappropriately that Ms. Nephew finally issued the misbehavior report about which plaintiff had been warned." Id. Second, Murray had an opportunity to present his case and was afforded, and utilized, an opportunity to file additional materials in support of his position, with the November 28, 2012 order converting the motion to dismiss into a motion for summary judgment. Id., 2013 WL 838351, at *4-*5 (Ex. A). Third, as demonstrated by reading the Murray I complaint and decision, the underlying factual basis of the claim is identical to the current claim—claiming adverse action allegedly taken in retaliation for the filing of a lawsuit. Thus, it is clear that there was a final determination on the merits, and the issues in contention between the parties in the prior Murray I decision and the case at hand are identical.

Accordingly, relitigating the issue of whether the misbehavior report was issued based on a proper purpose is precluded as the court in Murray I had already determined that such a misbehavior report was issued for a proper purpose. Accordingly, the undersigned comes to an identical conclusion as well. As Defendant Nephew would have issued the misbehavior report irrespective of the filing of the lawsuit, any such retaliation claims are rendered meritless. Allen, 449 U.S. at 94; Davis, 813 F.2d at 39.

Therefore, defendant's motion to dismiss should be granted on this ground as well.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendant's motion to dismiss (Dkt. No. 14) be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: December 5, 2013
       Albany, New York

Christian F. Hummel
U.S. Magistrate Judge